UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNARDO ALCARAZ,<br>　　　　　Plaintiff,<br>　　v.<br>KMF OAKLAND LLC, et al.,<br>　　　　　Defendants. | Case No. 18-cv-02801-SI<br><br>**ORDER GRANTING APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 28 |

On September 13, 2019, plaintiff Bernardo Alcaraz, who is representing himself pro se, filed an ex parte application for a temporary restraining order ("TRO") and order to show cause. Dkt. No. 28 ("TRO App."). At a case management conference held that same day, the Court ordered plaintiff to serve and notify the opposing side and set a hearing for the TRO for October 11, 2019. Dkt. No. 33. On September 16, 2019, defendant Altezza Condo LLC ("Altezza") filed an opposition. Dkt. Nos. 30 ("Def.'s Opp'n"), 31, 32. Alcaraz filed a reply brief and proposed order on October 9, 2019. Dkt. Nos. 36, 37.

The Court held a hearing on October 11, 2019, at which Alcaraz and Altezza appeared. For the reasons stated below, the Court GRANTS plaintiff's application for a TRO.

**BACKGROUND**

This lawsuit arises from Alcaraz's assertion that, on account of his race, color, and/or national origin, defendants have refused to sell him the residence that he occupies. Alcaraz alleges that defendant KMF Oakland LLC ("KMF") owned the 33-unit residential complex in Oakland where he and his family have resided since August 2010. He states that in mid-2015 tensions arose between himself and a new property manager on account of Alcaraz's being a Mexican citizen and

that his rent checks began to be refused. Dkt. No. 23 ("SAC") ¶¶ 38-48. In March 2016, KMF initiated unlawful detainer proceedings against Alcaraz in state court. *Id.* ¶ 49. While those proceedings were pending, in June 2016, KMF sold the building where Alcaraz resides to defendant Altezza.[1] *Id.* ¶ 50. Plaintiff states that he made his July 2016 rent payment to the company designated by Altezza. *Id.* ¶¶ 53-55. On August 1, 2016, in the unlawful detainer action, KMF secured a judgment of possession of the unit where Alcaraz resides.[2] *Id.* ¶ 62.

Alcaraz alleges that in late 2016, the units in the building where he resides began to be sold as condominiums but that "not one unit of the 33 units was sold to a buyer of Hispanic and/or Mexican origin." *Id.* ¶ 70. Alcaraz further states that in August and September 2016 he had communications with a firm representing Altezza in which they offered Alcaraz the opportunity to buy his unit at the sales price of $630,000 and that Alcaraz accepted.[3] *Id.* ¶¶ 76-78. The sale did not take place, and ultimately Alcaraz sued Altezza in state court for breach of contract and promissory estoppel in January 2018. *Id.* ¶ 83. In March 2019, Altezza prevailed in that suit on a motion for summary judgment.[4] *Id.* ¶ 85; Def.'s Opp'n at 3, Ex. G. Alcaraz is appealing the dismissal of his case, arguing that Altezza did not serve him with proper notice of the motion. TRO App. at 2.

---

[1] Altezza states that the sale occurred "in or around August 2016." Def.'s Opp'n at 2.

[2] Alcaraz alleges that KMF did this after misrepresenting to him that it was no longer moving forward with the unlawful detainer action due to the sale of the building to Altezza, and that KMF then went forth with an unlawful detainer trial while knowing that Alcaraz "was not going to be at trial since Plaintiff was told by property management personnel of KMF that no trial would take place." SAC ¶¶ 57-66.

[3] Altezza denies that it ever offered to sell the unit to Alcaraz.

[4] In the meantime, in September or October 2018, Altezza obtained a writ of possession that required Alcaraz to vacate his unit. On Alcaraz's motion, in November 2018 the Superior Court of Alameda County enjoined enforcement of the writ of possession during the pendency of his affirmative lawsuit. SAC ¶¶ 86-88; Def.'s Opp'n at 2-3, Ex. F. Altezza states that it "started anew the eviction process" following the entry of the orders in Alcaraz's state court action in July 2019, but that in August 2019 Altezza's counsel learned that the Sheriff's Office was unable to proceed with removing Alcaraz from his unit per the writ of possession because of notice that Alcaraz had filed a bankruptcy proceeding in United States Bankruptcy Court. Def.'s Opp'n at 3. Altezza states that the bankruptcy action was dismissed for failure to comply on September 11, 2019. *Id.* at 4. Alcaraz does not refer to any such bankruptcy proceeding in his papers.

On May 11, 2018, Alcaraz filed the present lawsuit in this Court against defendant KMF, asserting violations of the federal Fair Housing Act and the Fourteenth Amendment right to Due Process. Dkt. No. 1. Among the relief requested, Alcaraz requested that the Court enter "an order of permanent injunction enjoining KMF . . . from continuing to seek to employ the Alameda County Sheriff's Office through the use of its various individual Deputy Sheriffs from dislodging Plaintiff from the Premises" where Alcaraz resides. *Id.* at 12. At a case management conference in November 2018, Alcaraz informed the Court that KMF "is a cancelled foreign limited liability company" and thus he served them with the summons and complaint through the California Secretary of State. Dkt. No. 6 at 1. KMF has not made an appearance in this case.[5]

On November 21, 2018, Alcaraz filed a first amended complaint, adding claims against KMF for intentional interference with prospective economic relations, negligence, and injunctive relief. Dkt. No. 9. On July 22, 2019, with the Court's permission, Alcaraz filed a second amended complaint, adding Altezza as a defendant, and removing the claims for intentional interference with prospective economic relations and negligence. Dkt. No. 23. The remaining claims are for violation of the federal Fair Housing Act, violation of the Fourteenth Amendment right to Due Process, and injunctive relief. Altezza filed an answer to the second amended complaint on October 4, 2019. Dkt. No. 35.

On September 13, 2019, Alcaraz filed the application for a temporary restraining order and for an order to show cause that is now before the Court for decision. Dkt. No. 28.

**LEGAL STANDARD**

**I.    Temporary Restraining Order**

"[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear

---

[5] On July 1, 2019, Alcaraz filed a request to enter default against KMF. Dkt. No. 19. That same day, the Clerk's Office issued a notice directing Alcaraz to re-file the request because he had filed it incorrectly. On July 12, 2019, the Clerk's Office issued another reminder notice. Dkt. No. 22. When Alcaraz did not re-file his request, on August 7, 2019, the Clerk issued a notice stating that it would re-file the request for him. Dkt. No. 24. The Clerk then declined to enter default because Alcaraz did not meet the requirements of California Corporations Code § 1702. Dkt. No. 26. Alcaraz has not renewed his request that default be entered against KMF.

3

showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). In order to obtain a temporary restraining order or a preliminary injunction, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted); *see also Jones v. H.S.B.C. (USA)*, 844 F. Supp. 2d 1099, 1099 (S.D. Cal. 2012) (standard for granting a temporary restraining order is similar to standard for granting a preliminary injunction). "Alternatively, the plaintiff may demonstrate that the likelihood of success is such that 'serious questions going to the merits were raised and that the balance of hardships tips sharply in the plaintiff's favor,' so long as the other two elements of the *Winter* test are met." *Fid. Brokerage Servs. LLC v. Rocine*, No. 17-CV-4993-PJH, 2017 WL 3917216, at *3 (N.D. Cal. Sept. 7, 2017) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32, 1135 (9th Cir. 2011)).

## II. Federal Fair Housing Act

With certain limited exceptions, the federal Fair Housing Act makes it unlawful--

> **(a)** To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> **(b)** To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin. . . .
>
> **(d)** To represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available. . . .

42 U.S.C. § 3604.

The Fair Housing Act provides for various methods of enforcement, including through civil actions brought by aggrieved persons in United States district court. *Id.* § 3613(a). In such an action, "if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages, and subject to subsection (d), may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such

4

practice or ordering such affirmative action as may be appropriate).["6] *Id.* § 3613(c)(1).

The Ninth Circuit "'appl[ies] Title VII discrimination analysis in examining Fair Housing Act discrimination claims.' [Citation.] A plaintiff can establish a FHA discrimination claim under a theory of disparate treatment or disparate impact." *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) (citing *Gamble v. City of Escondido*, 104 F.3d 300, 304-05 (9th Cir. 1997)).

As such, the Ninth Circuit has adapted what is known as the *McDonnell Douglas* burden-shifting framework to the Fair Housing Act context. Under *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), a plaintiff alleging disparate treatment "must first establish a prima facie case of discrimination[.]" *See Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1053 (9th Cir. 2007) (citation omitted).

> Adapted to this situation, the prima facie case elements are: (1) plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury.[7] Establishing the prima facie case affords the plaintiff a presumption of discrimination. This test does not permit the court to consider rebuttal evidence at the prima facie case stage.
>
> After the plaintiff has established the prima facie case, the burden then must shift to the defendant to articulate some legitimate, nondiscriminatory reason for the action. To accomplish this, the defendant is only required to set forth a legally sufficient explanation.
>
> Assuming the defendant can successfully rebut the presumption of discrimination, the burden shifts back to the plaintiff to raise a genuine factual question as to whether the proffered reason is pretextual. A plaintiff may succeed in persuading the court that she has been a victim of intentional discrimination, "either directly by persuading the court that a discriminatory reason more likely motivated the [defendant] or indirectly by showing that the [defendant's] proffered explanation is unworthy of credence." The trier of fact may consider the same evidence that the plaintiff introduced to establish a prima facie case in determining whether the defendant's explanation is merely pretext. *Id.* "Once a prima facie case is established ... summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a [discrimination claim] is the elusive factual question of intentional discrimination."

---

[6] Subsection (d) states, "Relief granted under this section shall not affect any contract, sale, encumbrance, or lease consummated before the granting of such relief and involving a bona fide purchaser, encumbrancer, or tenant, without actual notice of the filing of a complaint with the Secretary or civil action under this subchapter." 42 U.S.C. § 3613(d).

[7] Later courts have expounded on the prima facie requirement. For instance, for a group of plaintiffs alleging disability discrimination at a shelter, the Ninth Circuit explained: "To establish such a prima facie case, the plaintiffs must show (1) that they are members of a protected class, (2) that applied for and were qualified for shelter at Community House, (3) that they were rejected, and (4) that openings at the shelter remained available." *Cmty. House*, 490 F.3d at 1053.

5

*Harris*, 183 F.3d at 1051 (citations omitted).

The *McDonnell Douglas* burden-shifting framework does not apply where the plaintiff is "able to advance direct evidence of discrimination." *Gilligan v. Jamco Devel. Corp.*, 108 F.3d 246, 250 (9th Cir. 1997) (citations omitted); *see also Cmty. House*, 490 F.3d at 1045-46 (finding district court erred in applying *McDonnell Douglas* test in Fair Housing Act case involving a facially discriminatory men-only shelter policy).

**DISCUSSION**

Alcaraz "seeks a temporary retraining order to prevent defendant Altezza Condo LLC from proceeding with the execution of a writ of possession secured by its predecessor KMF Oakland LLC[] specific to the real property occupied by plaintiff which is the subject of the controversy" in the second amended complaint. TRO App. at 1. He argues that he will suffer irreparable harm if the Court does not issue a TRO to preserve the status quo, because he will be deprived of the ability to adjudicate his Fair Housing Act claim and, more importantly, of the ability to purchase the residence in which he and his family reside. Alcaraz also asks that "the Court issue an Order to Show Cause setting a schedule for briefing and a hearing on a preliminary injunction." *Id.* at 4. Altezza objects, arguing that the factors for issuing a TRO weigh against Alcaraz and that Alcaraz failed to comply with various procedural requirements in his TRO application.

Alcaraz brings suit under the federal Fair Housing Act, 42 U.S.C. § 3601 et seq., alleging,

> Defendants injured Plaintiff in violation of the federal Fair Housing Act by committing the following discriminatory practices:
>
> a. Discriminating or otherwise making housing unavailable because of racial, ethnic, or national origin; and
>
> b. Discriminating in the terms, conditions, and privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of racial, ethnic, or national origin.

SAC ¶¶ 1, 114. In the SAC, he alleges that all of the units in the 33-unit residential complex have been sold as condominiums except his unit, and that none of the buyers are of Hispanic and/or of Mexican origin. *Id.* ¶¶ 71-72, 75. He states that the individual who managed the property for KMF beginning in mid-2015 made a disparaging statement to Alcaraz due to his "being a Mexican citizen

and in essence the 'type' of immigrant more suited for a lower level social status – certainly not a tenant in a newer construction condominium building and much less an owner of such premises" and that around that same time Alcaraz's rent checks started to be refused. *Id.* ¶¶ 40-44. The refusal of the rent checks ultimately formed the basis of the unlawful detainer action against Alcaraz that led to the issuance of the writ of possession that Alcaraz now seeks to have stayed.

The Court concludes that a TRO should issue because Alcaraz has shown "serious questions going to the merits and the balance of hardships tip[s] in [his] favor." *See Cmty. House*, 490 F.3d at 1047. "In this circuit, a party moving for a preliminary injunction may meet its burden by showing either: '(1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its favor.'" *Hous. Rights Ctr. v. Donald Sterling Corp.*, 274 F. Supp. 2d 1129, 1135 (C.D. Cal.), *aff'd sub nom. Hous. Rights Ctr. v. Sterling*, 84 F. App'x 801 (9th Cir. 2003) (quoting *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir. 2001)). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987) (citation omitted).

In cases such as these, irreparable harm is nearly always presumed. *See, e.g., Cmty. House*, 940 F.3d at 1048 ("It is undisputed that the balance of hardships tips in favor of the plaintiffs who were excluded from Community House due to the men-only policy"); *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001) ("We have held that where a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation."); *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1424 (11th Cir. 1984) ("because of the subtle, pervasive, and essentially irremediable nature of racial discrimination, proof of the existence of discriminatory housing practices is sufficient to permit a court to presume irreparable injury."). If Alcaraz is evicted and his residential unit sold to another buyer, then Alcaraz will be unable to recover the full relief contemplated by the Fair Housing Act, even if he ultimately prevails on that claim. Alcaraz and his family have resided in this unit for over nine years, and the loss of the ability to purchase this particular unit is not one that can be compensated for with money damages alone.

Although the allegations of the complaint could be more robust, the Court is mindful that Alcaraz is representing himself pro se, that Altezza was only recently added as a defendant, and that no discovery has been conducted to date. It would therefore be premature for the Court to determine that Alcaraz has shown no likelihood of success on the merits, as Altezza urges.

Moreover, the remaining *Winter* factors weigh in favor of granting the TRO. The balance of equities tips in favor of granting the TRO, where Alcaraz would be irreparably harmed if he were evicted from his unit and the unit sold, but where any countervailing harm that Altezza identifies (lost rent and legal fees) can be compensated with money damages. *See* Def.'s Opp'n at 4, 7. Any harm to Altezza may also be mitigated by requiring Alcaraz to post a bond, which the Court will order below. Additionally, at the hearing, Altezza stated that the writ of execution is presently stayed due to Alcaraz having recently filed a new bankruptcy action. Altezza does not address the public interest factor, and this factor weighs in favor of Alcaraz. *See United States v. Edward Rose & Sons*, 384 F.3d 258, 264 (6th Cir. 2004) ("the Supreme Court has found the FHA serves an 'overriding societal priority'") (citations omitted); *Johnson v. Macy*, 145 F. Supp. 3d 907, 921 (C.D. Cal. 2014) ("In the FHA, Congress declared that 'it is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States.' Accordingly, courts have emphatically declared that the public interest is served by effective enforcement of the FHA.") (citations omitted).

Finally, Altezza argues that Alcaraz's TRO application must be denied because Alcaraz failed to post security under Federal Rule of Civil Procedure 65(c). Def.'s Opp'n at 8-9. Rule 65(c) provides: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. . . ." Fed. R. Civ. P. 65(c). "The district court retains discretion 'as to the amount of security required, *if any*.'" *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)). At the hearing, Alcaraz informed the Court that his monthly rent is $2,460. Alcaraz has not argued that he is unable to afford to post a bond. Therefore, the Court finds $5,000 to be an appropriate amount of security for Alcaraz to post pending ruling on his motion for a preliminary

8

injunction.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiff Alcaraz's request for a temporary restraining order. The Court hereby ENJOINS defendants (or their officers, agents, servants, employees, and attorneys) and the Alameda County Sheriff's Office from proceeding on the execution of the writ of possession obtained in Alameda County Superior Court with regard to the residence at which Alcaraz resides at 6465 San Pablo Avenue, Unit 403, Oakland, California, pending resolution of Alcaraz's motion for a preliminary injunction.

As discussed at the hearing and agreed to by the parties, **the Court sets the preliminary injunction hearing for 10:00 a.m. on December 6, 2019.** Plaintiff Alcaraz shall file his motion for preliminary injunction, along with any accompanying declarations and other evidence, no later than October 28, 2019. Defendant Altezza shall file its opposition by November 8, 2019. Alcaraz's optional reply brief is due November 18, 2019.

Should defendant Altezza choose to file a motion to dismiss, as discussed at the hearing, it will be heard at the same time as the motion for preliminary injunction, on December 6, 2019. Therefore, any motion to dismiss must be filed no later than November 1, 2019. Alcaraz's opposition to the motion is due November 15, 2019, and Altezza's reply brief is due November 22, 2019.

Pursuant to Federal Rule of Civil Procedure 65(c), **plaintiff Alcaraz shall post a bond, deposited to the Court's registry, in the amount of $5,000.00, no later than October 18, 2019, at 4:00 p.m.** Plaintiff may do this by depositing the funds, along with a copy of this Order, at the Intake desk at the Clerk's Office on the 16th Floor of the San Francisco Courthouse. If Alcaraz does not post a bond by this date, defendants may move the Court to dissolve the TRO.

**IT IS SO ORDERED**.

Dated: October 11, 2019

_____
SUSAN ILLSTON
United States District Judge