UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNARDO ALCARAZ,<br><br>Plaintiff,<br><br>v.<br><br>KMF OAKLAND LLC, et al.,<br><br>Defendants. | Case No. 18-cv-02801-SI<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S TAC**<br><br>Re: Dkt. No. 105 |

Before the Court is the Motion to Dismiss the Third Amended Complaint by defendants KMF Oakland LLC and Klingbeil Capital Management, Ltd. Dkt. No. 105 ("Defs' Mot."). Having reviewed the parties' submissions, the Court hereby DENIES the Motion to Dismiss.

**BACKGROUND**

**I.  Relevant Factual Background**

As set forth in this Court's Order Granting Plaintiff's Motion for Preliminary Injunction, Dkt. No. 104, this lawsuit arises from plaintiff Bernardo Alcaraz's assertion that, on account of his race, color, and/or national origin, defendants have undertaken eviction proceedings against plaintiff and have refused to sell plaintiff his occupied residence. The following allegations are drawn from the third amended complaint. Dkt. No. 73 ("TAC").

Mr. Alcaraz, a Mexican born, Hispanic-American, emigrated to the United States in 1991 and became a naturalized United States Citizen in 1997. TAC ¶ 2. On August 28, 2010, Mr. Alcaraz signed a two-bedroom apartment lease at 6465 San Pablo Avenue, Apartment #403, Oakland, California, and he has lived there ever since. *Id.* ¶¶ 9, 13; *see also* Dkt. No. 73-1, TAC Ex. A at 6

(Lease Agreement).[1] Apartment #403 is a unit in a 33-unit building now called "The Emerson." TAC ¶ 9. In 2010, Cascade Acceptance Corp. owned The Emerson. *Id.* ¶ 10.

Prior to signing the lease agreement, Mr. Alcaraz alleges he spoke with an Emerson manager. *Id.* ¶¶ 10-11. The manager stated that in the future Emerson units would be individually sold. *Id.* ¶ 11. Mr. Alcaraz further alleges the manager indicated individuals occupying Emerson units would have first priority to purchase their units when they were sold. *Id.*

On or around March 30, 2011, defendant KMF Oakland, LLC ("KMF") purchased The Emerson from Cascade Acceptance Corp., with defendant Klingbeil Capital Management, Ltd. ("Klingbeil") as the management company. TAC ¶¶ 14-15; *see* Dkt. No. 73-2, TAC Ex. B at 2 (County of Alameda Assessor's Office Property Ownership Records). Mr. Alcaraz alleges from the start of KMF's ownership, Johnny Rodriguez, a Klingbeil employee, managed the property. TAC ¶ 15. "For the duration of Mr. Rodriguez's work at The Emerson, he exhibited a discriminatory, hostile, and adversarial attitude of racial/ethnic/national origin/ancestry animus toward Mr. Alcaraz, apparently believing that, due to being Mexican, Mr. Alcaraz was not fit to be a tenant at The Emerson." *Id.* ¶ 17. Mr. Alcaraz alleges, during their first interaction, Mr. Rodriguez asked Mr. Alcaraz if he was at The Emerson to perform maintenance work. *Id.* ¶ 18. Every so often, Mr. Rodriguez would ask, "'Oh, you're still here?' –implying surprise" Mr. Alcaraz was capable of remaining as an Emerson tenant. *Id.* Mr. Alcaraz alleges sometime in 2015 Mr. Rodriguez told Mr. Alcaraz "he looked like he was more suited to perform maintenance work at The Emerson than to be a tenant." *Id.*

In early 2015, Mr. Alcaraz alleges he "began being assessed 'late' fees on rent checks that he had timely paid by mail." *Id.* ¶ 19. Mr. Alcaraz alleges Bianca Rodriguez was responsible for processing the rent checks and she was in a romantic relationship with Mr. Rodriguez. *Id.* ¶ 20. In mid-2015, Mr. Alcaraz alleges he started to hand deliver his rent checks to Ms. Rodriguez's office to ensure the department received his rent checks. *Id.* ¶ 22. Mr. Alcaraz alleges Ms. Rodriguez would no longer be in the office when he arrived, even when Mr. Alcaraz had called ahead to

---

[1] For convenience, all citations to page numbers refer to the ECF branded number in the upper right corner of documents.

confirm Ms. Rodriguez's presence. *Id.* Mr. Alcaraz alleges he would leave his rent checks under the office door as instructed, but his rent checks continued to be processed either untimely or not at all. *Id.* "On at least one occasion, Ms. Rodriguez called Mr. Alcaraz to tell him she did not receive his rent check even though Mr. Alcaraz had delivered it." *Id.*

On September 24, 2015, KMF filed an unlawful detainer action against Mr. Alcaraz, attempting to evict him for unpaid rent. *Id.* ¶ 23. In response to the unlawful detainer action, Mr. Alcaraz alleges the parties reached an agreement. *Id.* ¶ 24. Mr. Alcaraz would deliver his rent checks to another KMF employee (not Ms. Rodriguez) and KMF would dismiss the action. *Id.* Although Mr. Alcaraz repeatedly attempted to memorialize the new agreement and KMF agreed to memorialize the new agreement, KMF never memorialized the new agreement in Mr. Alcaraz's lease. *Id.* ¶ 25.

In early 2016, Mr. Alcaraz alleges Klingbeil again failed to process his rent checks. *Id.* ¶ 26. On March 11, 2016, KMF initiated a second unlawful detainer action ("the UD Action") against Mr. Alcaraz although Mr. Alcaraz had submitted his rent checks to Klingbeil as required. *Id.* While the UD Action was pending, on June 28, 2016, KMF sold The Emerson to defendant Altezza Condo LLC ("Altezza"). *Id.* ¶ 27; TAC Ex. B at 2 (County of Alameda Assessor's Office Property Ownership Records); Dkt. No. 73-9, TAC Ex. I at 2-3 (Grant Deed). Mr. Alcaraz alleges he made his July 2016 rent payment to the company designated by Altezza and "[t]he rent check was processed without issue." TAC ¶ 29. Mr. Alcaraz alleges he inquired about the UD Action and was assured, because of the building sale, the UD Action would not continue. *Id.* ¶¶ 30-31. Based on these representations, Mr. Alcaraz alleges he traveled internationally on business in late July 2016. *Id.* ¶ 32; *see* Dkt. No. 73-13, TAC Ex. M at 2-3 (Passport Pages).

On August 1, 2016, KMF secured a judgment of possession in the UD Action.[2] TAC ¶ 33.

---

[2] KMF and Klingbeil argue in their motion that neither party "had any interest or involvement in the Subject Property after" its sale on June 28, 2016, and the state court allowed "Altezza to continue the unlawful detainer action in the name of KMF as a procedural matter even though KMF was no longer operating and no longer a functional party to the unlawful detainer action." Defs' Mot. at 8; Dkt. No. 121 (Reply) at 9-10.

"Mr. Alcaraz was not in attendance at the court proceeding since he was under the impression that the action would not proceed." *Id.* On October 5, 2018, KMF obtained a Writ of Possession for Apartment #403 based on the judgment in the UD Action.[3] *Id.* ¶ 47; Dkt. No. 73-18, TAC Ex. R at 2-3 (Writ of Possession). Mr. Alcaraz alleges KMF obtained the writ "with the presumptive assistance and participation of Altezza and Klingbeil, as KMF had ceased to operate in California no later than November 13, 2017[.]" TAC ¶ 47. Subsequently, on October 23, 2018, Mr. Alcaraz states he received a Notice to Vacate from the Alameda County Sheriff's Office. *Id.* ¶ 48; Dkt. No. 73-19, TAC Ex. S (Notice to Vacate). Sometime between July 25, 2019, and August 15, 2019, Mr. Alcaraz states Altezza "started anew the eviction process" based on the 2016 unlawful detainer judgment. TAC ¶ 49.

## II.   Procedural Background

On May 11, 2018, Mr. Alcaraz, acting pro se, filed the present lawsuit in this Court against defendants KMF and Does 1 through 50. Dkt. No. 1. The complaint raised two causes of action, for violation of the Fair Housing Act ("FHA") and Fourteenth Amendment right to Due Process. *Id.* Subsequently, Mr. Alcaraz amended his complaint twice. Dkt. Nos. 9, 23. The second amended complaint added Altezza as a defendant. Dkt. No. 23.

On December 17, 2019, the Court stayed the case and referred Mr. Alcaraz to the Federal Pro Bono Project for appointment of counsel. Dkt. No. 67. On March 11, 2020, the Court appointed pro bono counsel and set further deadlines in the case, including a deadline for plaintiff to file his third amended complaint. Dkt. Nos. 69, 70.

On April 22, 2020, Mr. Alcaraz, through newly appointed counsel, filed a third amended complaint along with a motion for preliminary injunction. TAC; Dkt. No. 76. The third amended complaint, which is now the operative complaint, names KMF Oakland LLC; Klingbeil Capital Management, Ltd.; and Altezza Condo LLC as defendants. Mr. Alcaraz raises four claims for relief: (1) discrimination on the basis of race, color, and/or national origin in violation of the federal FHA,

---

[3] See note 2, *supra*.

4

1    (2) discrimination on the basis of race in violation of the California Fair Employment and Housing

2    Act ("FEHA"), (3) discrimination on the basis of race, color, ancestry, and/or national origin in

3    violation of California's Unruh Civil Rights Act, and (4) discrimination on the basis of race, color,

4    ancestry, and/or national origin in violation of California's Unfair Competition Law ("UCL").

5        On April 24, 2020, KMF and Klingbeil (collectively, "defendants") were served with the

6    summons and the third amended complaint. Dkt. Nos. 82, 117. KMF and Klingbeil missed the

7    deadline to respond. On May 29, 2020, KMF, Klingbeil, and plaintiff filed a stipulation, which the

8    Court approved, in which KMF and Klingbeil agreed not to oppose plaintiff's preliminary injunction

9    motion, plaintiff agreed not to seek preliminary injunctive relief as to KMF and Klingbeil, and the

10   parties agreed to a briefing schedule for KMF and Klingbeil to move to dismiss the third amended

11   complaint. Dkt. Nos. 100, 101.

12       On June 12, 2020, the Court granted the preliminary injunction. Dkt. No. 104. On June 17,

13   2020, KMF and Klingbeil filed the instant motion to dismiss the third amended complaint. Dkt. No.

14   105.

15

16   **LEGAL STANDARD**

17       Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if

18   it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to

19   dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."

20   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires

21   the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted

22   unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require

23   "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more

24   than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

25   do." *Id.* at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the

26   speculative level." *Id.*

27       In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's

28   allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los*

United States District Court
Northern District of California

*Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under Rule 12(b)(6), a claim may be dismissed based on the statute of limitations only when "the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* (quoting *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

## DISCUSSION

Defendants KMF and Klingbeil move to dismiss each of the causes of action in the third amended complaint primarily based on the respective statutes of limitations. The Court address the relation back doctrine, then analyzes each claim raised in the third amended complaint.

### I.     The Relation Back Doctrine

In their motion, defendants assert, without further support, that the claims of the third amended complaint "do not relate back, particularly as to Klingbeil . . . ." *See* Defs' Mot. at 17, 18. The Court finds the relation back doctrine applies and the addition of Klingbeil as a named defendant "relates back to the date of the original pleading" under Rule 15(c)(1).

"Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). Under Rule 15(c)(1),

> An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;

6

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

. . .

Fed. R. Civ. P. 15(c)(1).

The first requirement of relation back, in Rule 15(c)(1)(B), is met here since the amended claims "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Mr. Alcaraz consistently maintained he suffered discrimination on the basis of his race, ethnicity, and/or national origin when KMF refused his rent payments and initiated unlawful detainer proceedings against him. *See generally* Dkt. No. 1. The legal claims of the third amended complaint arise out of the same conduct, transaction, or occurrence of alleged discrimination plaintiff set forth in the original complaint, and defendants do not argue otherwise. *See generally* TAC.

Second, Rule 15(c)(1)(C)(i) "requires that the prospective defendant has received sufficient 'notice of the action' within the Rule 4(m) period that he will not be prejudiced in defending the case on the merits. The Advisory Committee Notes to the 1966 Amendment clarify that 'the notice need not be formal.'" *Krupski*, 560 U.S. at 554 n.5 (citing Advisory Committee's 1966 Notes 122). In their reply brief, defendants dispute that this requirement is met, arguing: (1) defendants will be prejudiced by having to defend the suit at this time, and (2) defendants did not receive notice of the suit until April 2020, which they say is too late. Dkt. No. 121 at 4-8 ("Reply"). The Court can discern no prejudice that will come to Klingbeil from now having to defend the claim that was originally brought against KMF, nor do defendants cite any specific prejudice that will befall them. Rather, defendants generally assert, in the time since the events of 2015 and 2016, "memories have faded, records have likely been lost, and evidence has deteriorated." *See id.* at 6. Even if true, the

7

general deterioration of evidence is just as likely to harm plaintiff, who bears the burden of proof in this case.

With regard to notice, the parties dispute when Klingbeil received notice of the action. Klingbeil asserts neither it nor KMF received any notice of Mr. Alcaraz's suit until they were served with the third amended complaint in April 2020. When notice is in dispute, some courts have employed a "plausibility" test. *See, e.g., Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 926 F. Supp. 2d 935, 957-58 (S.D. Tex. 2013) (finding on summary judgment that claim against newly added defendant was not time-barred and that relation back applied, where plaintiff put forth "facts plausibly showing" that new defendant had notice of the filing of the original complaint).

Mr. Alcaraz has come forward with facts plausibly showing that Klingbeil had notice of the original suit. Here, plaintiff initially appeared pro se, suing KMF, which was a corporation that had "ceased to exist as an operating business" in 2017. *See* Defs' Mot. at 9. After initially missing the service deadline and receiving an extension of time from the Court, *see* Dkt. No. 3, plaintiff made a number of attempts to serve KMF, including serving the complaint on the California Secretary of State, in accordance with California Corporations Code Section 17708.07. *See* Dkt. Nos. 5, 14.[4] On the day Mr. Alcaraz filed this instant suit, he filed notice of the suit and a copy of the complaint on the docket in the pending UD Action. *See* Dkt. No. 119-1, Goldrosen Decl., Ex. A.

Moreover, the Rule 15 Advisory Committee Notes to the 1991 Amendment state, "In allowing a name-correcting amendment within the time allowed by Rule 4(m), this rule allows not only the 120 days [since amended to 90 days] specified in that rule, *but also any additional time resulting from any extension ordered by the court pursuant to that rule*, as may be granted, for example, if the defendant is a fugitive from service of the summons." Advisory Committee's 1991 Notes (emphasis added); *see also Mann v. American Airlines*, 324 F.3d 1088, 1090-91 (9th Cir. 2003) (failure to serve process within Rule 4(m)'s proscribed period by does not cause the statute of limitations to start to run again, and district court has discretion to extend the Rule 4(m) period

---

[4] Although the Clerk's Office rejected Mr. Alcaraz's motion for default judgment for failure to comply with California Corporations Code section 1702, *see* Dkt. No. 26, defendants do not argue that Mr. Alcaraz's service on the California Secretary of State was legally erroneous.

even if statute of limitations would bar re-filing of suit if court dismissed the case instead of granting extension). Mr. Alcaraz kept the Court apprised of his efforts to serve KMF and received permission to continue his efforts to effect service and to pursue default against KMF. Dkt. Nos. 7, 16. In December 2019, the Court *sua sponte* stayed the case in order for plaintiff to obtain pro bono counsel. Dkt. No. 67. Once pro bono counsel was appointed, plaintiff filed a third amended complaint by the Court-ordered deadline and plaintiff's new counsel effected service on KMF and on newly-named Klingbeil. *See* Dkt. Nos. 73, 81, 82. Under these circumstances, the Court can neither find that plaintiff failed to pursue service "with reasonable diligence" or that plaintiff failed to serve defendants "within a prescribed number of days after filing," as defendants argue. *See* Defs' Mot. at 16. The Court will not fault Mr. Alcaraz, then a pro se litigant, for any delay in service to KMF, who was by that time a cancelled LLC.

Third, Rule 15(c)(1)(C)(ii) is satisfied when "the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant." *Krupski*, 560 U.S. at 553-54. "[R]elation back under Rule 15(c)(1)(C)(ii) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." *Krupski*, 560 U.S. at 541. Klingbeil reasonably should have understood plaintiff intended to sue Klingbeil as well as KMF. The original complaint points to Klingbeil Capital Management Ltd. in several places, *see* Dkt. No. 1 ¶¶ 23, 24, 39, but misapprehends that Johnny Rodriguez was a KMF employee rather than a Klingbeil employee. *See id.* ¶¶ 24, 27-28 (describing Mr. Rodriguez as "an employee and agent of KMF"). Additionally, the third amended complaint alleges Klingbeil is "an indirect parent company of, and/or shares a parent company with, defendant KMF Oakland LLC," TAC ¶ 4-5, and defendants do not dispute this allegation. *See* Defs' Mot. at 22.

Because the requirements for relation back are met, the filing date of the third amended complaint, including its new state law claims and its claims against defendant Klingbeil, relates back to the filing date of the initial complaint. Using the initial filing date of May 11, 2018, the Court now proceeds to analyze whether the claims of the third amended complaint are within the respective statutes of limitations.

9

**II.     FHA**

Under the FHA, "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . ." 42 U.S.C. § 3613.

Defendants argue the FHA claim is time-barred on several grounds. First, defendants argue plaintiff's cause of action began to run from either 2015, when plaintiff first experienced the discriminatory conduct, or on April 18, 2016, when plaintiff raised an FHA claim in his Verified Answer to the UD Action in state court. Defs' Mot. at 13-15. Second, defendants argue they "had no legal authority on which to deny Plaintiff housing or discriminate against him under the Fair Housing Act" after they sold the building on June 28, 2016. *Id.* at 15-16. Defendants also refer to the doctrine of laches, *id.* at 16, and argue *res judicata* applies to bar re-litigation of the FHA claim because Mr. Alcaraz raised this as an affirmative defense in the UD Action.[5] *Id.* at 19-22.

The Court finds Mr. Alcaraz's FHA claim is not time-barred. As explained by the Ninth Circuit,

> The Supreme Court has held that "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the statutory period, running from] the last asserted occurrence of that practice." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81, 102 S. Ct. 1114, 71 L.Ed.2d 214 (1982) (footnote omitted). Congress has since codified this continuing violation doctrine by amending the FHA to include both "the occurrence [and] the termination of an alleged discriminatory housing practice" as events triggering the two-year statute of limitations. 42 U.S.C. § 3613(a)(1)(A) (emphasis added).

*Garcia v. Brockway*, 526 F.3d 456, 461-62 (9th Cir. 2008). Accordingly, courts have found FHA claims timely where the plaintiff alleged a series of discriminatory events culminating in an eviction action that fell within the two-year filing period, even if some of the discriminatory events occurred more than two years before the complaint was filed. *See Patton v. Hanassab*, No. 14cv1489 AJB (WVG), 2015 WL 589460, at *8 (S.D. Cal. Feb. 12, 2015) (denying motion to dismiss FHA and

---

[5] Defendants also assert, without citation to legal authority, that the FHA claim must be dismissed because they say plaintiff did not serve defendants until April 2020. Defs Mot. at 16. The Court rejects this argument for the reasons stated in Section I, *supra*, regarding notice and the relation back doctrine. *See also Mann v. American Airlines*, 324 F.3d 1088, 1090-91 (9th Cir. 2003)

FEHA claims where the claims were "not based solely" on discriminatory comments made outside of the limitations period but where the amended complaint instead "detail[ed] a series of discriminatory conduct alleged to have occurred over a two year period, all of which Plaintiff claims was intended to wrongfully evict Plaintiff from the Property"); *Simovits v. Chanticleer Condo. Ass'n*, 933 F. Supp. 1394, 1404 (N.D. Ill. 1996) (finding the FHA statute of limitations ran not from the date the plaintiffs learned of the discriminatory covenant but from the date the covenant was last enforced against them, because "the limitations period, for claims brought under the FHA, begins on the date of 'the last asserted occurrence of [the discriminatory] practice'") (quoting *Havens*, 455 U.S. at 381).

Likewise here, Mr. Alcaraz alleged a series of ongoing discriminatory conduct by Klingbeil employees Johnny Rodriguez and Bianca Rodriguez. This included allegations that in early 2015 Mr. Alcaraz "**began** being assessed 'late' fees on rent checks that he had timely paid by mail[,]" that in mid-2015 "Klingbeil and/or KMF **continued** to process his rent checks in an untimely manner or not at all[,]" and that the failure to process his rent payments resulted in unlawful detainer actions filed against him in September 2015 and again in March 2016, resulting in an August 2016 judgment against him. *See* TAC ¶¶ 19, 22-23, 26, 33 (emphases added). For purposes of the FHA limitations period, the "last asserted occurrence" of the discriminatory practice was not in early or mid-2015, as defendants argue. Nor was it on April 18, 2016, when plaintiff raised an FHA claim in his answer to the UD Action in state court.[6] The face of the third amended complaint alleges ongoing discriminatory conduct that culminated in a March 2016 eviction action which proceeded to judgment on August 1, 2016. Even assuming *arguendo* that defendants are correct that they had no legal liability after they sold the building on June 28, 2016, plaintiff alleges their discriminatory conduct continued through the date of the sale, and so the May 11, 2018 complaint falls within the

---

[6] The April 18, 2016 answer is not determinative for several reasons, including that: (1) it was not the "last asserted occurrence" of the discriminatory practice, and (2) it asserts different facts. *See* Defs' Mot. at 15; Dkt. No. 106-2 at 3-4. In the answer, Mr. Alcaraz asserted that KMF violated the FHA when it "refused to lease the subject premises to [Mr. Alcaraz] for the term of January 1st 2016 to June 30th 2016[,]" which are not facts alleged in this suit. *See* Defs' Mot. at 15; Dkt. No. 106-2 at 3-4.

two-year statutory period for an FHA claim.[7] *See* 42 U.S.C. § 3613.

The doctrine of "[l]aches . . . cannot be invoked to bar legal relief in the face of a statute of limitations enacted by Congress." *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 959 (2017) (internal alterations and citation omitted). Here, Congress enacted a statute of limitations. *See* 42 U.S.C. § 3613(a)(1)(A). Thus, the doctrine of laches cannot be invoked to bar legal relief.

Finally, *res judicata* does not bar the FHA claim. Defendants argue that Mr. Alcaraz is attempting to relitigate the state court UD Action, where he raised an FHA claim as an affirmative defense, and that *res judicata* bars him from doing so. Defs' Mot. at 20. "Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (citing *Western Radio Servs. Co. v. Glickman,* 123 F.3d 1189, 1192 (9th Cir. 1997)). Claim preclusion requires: "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Id.* "The central criterion in determining whether there is an identity of claims between the first and second adjudications is 'whether the two suits arise out of the same transactional nucleus of facts.'" *Id.* at 714 (quoting *Frank v. United Airlines, Inc.,* 216 F.3d 845, 851 (9th Cir. 2000)). Due to their summary nature, unlawful detainer proceedings have limited res judicata effect. *Madrid v. KMF Fremont, LLC*, No. 11-CV-05804 NC, 2012 WL 12883829, at *3 (N.D. Cal. Apr. 19, 2012) (citing *Housing Rights Ctr. v. Sterling*, 404 F. Supp. 2d 1179, 1188-89 (C.D. Cal. 2004)).

The Court finds the UD Action and the instant suit do not arise out of the same transactional nucleus of facts. As Mr. Alcaraz argues, the UD Action "was predicated on [the] alleged failure to pay several months' rent to KMF" while the instant suit "concerns [defendants' alleged] discriminatory harassment and attempts to evict Mr. Alcaraz on account of his Mexican/Hispanic

---

[7] Defendants appear to concede that June 28, 2016, may be the correct date of the last occurrence of the alleged discriminatory conduct. *See* Defs' Mot. at 15-16 ("If **June 28, 2016 is considered the last date in time at which the statute of limitations could begin running as to KMF and Klingbeil** [*sic*].") (emphasis and typographical error in original).

1   race, color, national origin, and/or ancestry." Dkt. No. 118 at 28 (citations omitted) (Alcaraz Opp.); *see also Madrid*, 2012 WL 12883829, at *3 ("Unlawful detainer actions focus on the right of possession of a property as the primary right at issue[,]" and so do not share a cause of action with a discrimination claim raised as an affirmative defense.). The Court need not reach the other elements of *res judicata*, as the argument fails on the identity of claims.

The Court DENIES the motion to dismiss the FHA claim.[8]

### III.   Fair Employment and Housing Act ("FEHA")

The parties dispute the length of the statute of limitations. Defendants argue FEHA has a one-year statute of limitations pursuant to California Government Code § 12960(e). Defs' Mot. at 16. However, section 12960(e) governs employment discrimination and is not applicable here. For claims of housing discrimination, "[a]n aggrieved person may commence a civil action in an appropriate court not later than **two years** after the occurrence or the termination of an alleged discriminatory housing practice. . . ." Cal. Gov't Code § 12989.1 (emphasis added).

As with the FHA claim, defendants argue the FEHA claim is untimely because, they allege, Mr. Alcaraz "knew he had potentially viable claims for relief against KMF for discrimination on the basis of race and national origin under California law as early as April 18, 2016, [but] he did not raise the FEHA claim until the filing of the third amended complaint on April 22, 2020 more than 4 years later." Def's Mot. at 17. As explained in Section I, *supra*, under the relation back doctrine, the operative filing date for the FEHA claim is the date of the filing of the original complaint on May 11, 2018. Moreover, for the reasons stated above regarding the FHA claim, April 18, 2016 (the date on which plaintiff filed his answer in the UD Action), is not when the statute of limitations began to run. The FEHA statute of limitations mirrors the FHA statute, looking to "the occurrence

---

[8] The Court GRANTS defendants' requests for judicial notice to the extent defendants ask the Court to take notice of the existence of the documents and court proceedings in the underlying UD Action. *See* Dkt. No. 106. The Court does not take notice of the truth of any underlying facts litigated in the state court cases. *See Marsh v. San Diego Cnty.,* 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006) (citations omitted). "[T]aking judicial notice of findings of fact from another case exceeds the limits of [Federal] Rule [of Evidence] 201." *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).

or the termination of an alleged discriminatory housing practice. . . ." *See* Cal. Gov't Code § 12989.1. Even assuming defendants' liability ended when their ownership of the building ended on June 26, 2018, plaintiff's complaint was filed within the two-year period.

As such, Mr. Alcaraz's FEHA claim against KMF and Klingbeil is not time-barred.[9]

### IV.  Unruh Civil Rights Act

California's Unruh Civil Rights Act does not have a single statute of limitations. *Gatto v. Cty. of Sonoma*, 98 Cal. App. 4th 744, 759 (2002); *Kemp v. Regents of Univ. of Cal.*, No. C-09-4687 PJH, 2010 WL 2889224, at *6 (N.D. Cal. July 22, 2010). A two-year statute of limitations applies to causes of action under provisions evolving from common law, and a three-year statute of limitations applies to other causes of action. *Gatto*, 98 Cal. App. 4th at 759; *Kemp*, 2010 WL 2889224, at *6. Defendants argue for the two-year statute of limitations while Mr. Alcaraz argues for the three-year statute of limitations. *Compare* Defs' Mot. at 18 (citing *Hernandez v. Sutter W. Capital*, No. C09-03658, 2010 WL 3385046, at *2 (N.D. Cal. Aug. 26, 2010); *Indep. Hous. Servs. of San Francisco v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1359 (N.D. Cal. 1993)) *with* Alcaraz Opp. at 12 *(*citing *Kemp*, 2010 WL 2889224, at *6). The Court finds it unnecessary to determine whether the two-year or three-year statute of limitations applies because the Unruh cause of action is not time-barred even under the two-year statute of limitations.

Under the relation back doctrine, the Unruh claims relate back to the original complaint and thus are considered filed on May 11, 2018. *See* Section I, *supra*. At a minimum, therefore, the triggering event for the statute of limitations must have occurred on or after May 11, 2016. Defendants argue the Unruh Act claim is time-barred because the earliest Mr. Alcaraz knew he had a claim against defendants was in mid-2015. Defs' Mot. at 18. The district court rejected this

---

[9] Defendants briefly argue the FEHA cannot apply to Klingbeil because "it was never owner of the Subject Property[,]" citing California Government Code section 12955(a). *See* Defs' Mot. at 17. However, defendants ignore the remaining subdivisions of that code section, including subsection (d), which applies to "any person subject to the provisions of Section 51 of the Civil Code," as well as subsection (i), which applies to "any person or other organization or entity whose business involves real estate-related transactions . . . ." Reserving any determination of whether those subsections apply to Klingbeil, the Court rejects defendants' contention that FEHA cannot apply to Klingbeil simply because it did not own the subject property.

argument in *Patton v. Hanassab*, No. 14CV1489 AJB WVG, 2015 WL 589460, at *8 (S.D. Cal. Feb. 12, 2015). There, the defendant moved to dismiss FHA, FEHA, and Unruh Act claims on statute of limitations grounds, arguing in part that the claims were untimely because the plaintiff alleged discriminatory comments by the property manager that began more than two years before the filing of the lawsuit. The plaintiff alleged he was subject to discriminatory conduct beginning in spring 2012. *Id.* at *2. The landlord filed an unlawful detainer action against him in February 2014, dismissed it in March 2014, and plaintiff filed his federal suit in June 2014. *Id.* at *2-3. In declining to dismiss the Unruh Act claim, the district court stated,

> [T]he Court declines to dismiss the Unruh Act claim because Plaintiff has adequately pleaded a violation, even absent the comments allegedly made in spring of 2012. Plaintiff's alleged injury was the wrongful attempts to evict Plaintiff, which culminated in the unlawful detainer action in March 2014. To the extent Plaintiff's Unruh Act claim is predicated on the unlawful detainer action, the Court finds Plaintiff's claim for violation of the Unruh Act timely. Thus, at this stage in the proceeding, the Court is not inclined to dismiss any cause of action on statute of limitations grounds.

*Id.*

So too here. Even setting aside comments or rent refusal that occurred in 2015 or early 2016, Mr. Alcaraz has alleged that KMF and Klingbeil wrongfully attempted to evict him in an eviction action that began in March 2016 and proceeded through to judgment on August 1, 2016. TAC ¶¶ 26, 33. Using May 11, 2018, as the operative filing date of the claim, the Unruh Act claim against KMF and Klingbeil is not time-barred even under a two-year statute of limitations.

### V.  Unfair Competition Law ("UCL")

The Unfair Competition Law has a four-year statute of limitation. Cal. Bus. & Prof. Code § 17208. Under the relation back doctrine, the UCL claims relate back and are considered filed on May 11, 2018. *See* Section I, *supra*. At a minimum, the triggering event for the statute of limitations must have occurred on or after May 11, 2014. The third amended complaint outlines numerous actions that occurred within the relevant time period, including the 2015 and 2016 refusal of Mr. Alcaraz's rent checks, and the unlawful detainer action that proceeded from March through August 2016. *See* TAC ¶¶ 19-33.

15

The UCL claim against KMF and Klingbeil is not time-barred.

## CONCLUSION

The Court DENIES defendant KMF and Klingbeil's Motion to Dismiss the Third Amended Complaint.

**IT IS SO ORDERED**.

Dated: August 6, 2020

_____
SUSAN ILLSTON
United States District Judge